UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>CHRISTOPHER CONDRON<br>JESSICA METIVIER<br><br>    Defendants | CRIMINAL No. 17-10243-IT |

<u>MOTION IN LIMINE REGARDING ATTORNEY TESTIMONY</u>

      The United States respectfully moves this Court to admit the testimony of the Attorney referenced in the indictment and the government's pretrial memorandum. As further described below, the Attorney was a percipient witness to the crimes in the indictment, was acting on the defendant's behalf, and his testimony and the documents provided to him are not subject to the attorney-client privilege.

**Factual Background**

      As summarized in the government's pretrial memorandum, in about May 2009, JESSICA METIVIER approached "the Attorney" about the possibility of her and CHRISTOPHER CONDRON submitting grant applications for the Section 1603 program. While METIVIER introduced CONDRON to the Attorney, and the Attorney considered METIVIER (and not CONDRON) his client, it was CONDRON who provided most of the documents and information to the Attorney.

      Once the IRS audit began, investigators from the IRS first interviewed the Attorney in September 2013 and issued an IRS summons to him for the production of records. The

summons requested copies of all records relating to CONDRON and METIVIER as well as "SB," Acton Bio, and other entities that CONDRON and METIIVER used to submit 1603 applications. The Attorney cooperated in the investigation and produced about 10 boxes of documents. The Attorney will be a witness in the case.

Prior to the indictment in this case, in May 2016, the government notified METIVIER's prior counsel of record that the government was in the possession of approximately 10 boxes of documents from the Attorney. After indictment, the government then gave both former and successor counsel for both defendants an opportunity to review these documents.

In addition to the documents that the Attorney provided, the Attorney provided the government with a thumb-drive of documents and email communications. The government provided both defendants with a complete copy of this thumb-drive, which included a folder that was designated as communications between the Attorney and METIVIER. The government originally avoided making any inspection of this particular folder, but nonetheless provided both defendants with the complete thumb-drive.

More recently, in August 2018, METIVIER agreed to waive the attorney client privilege. After this, the government has had the opportunity to view some of these email communications between METIVIER and the Attorney, but does not anticipate making use of these emails at trial.

## ARGUMENT

A.   **The Attorney-Client Privilege**

The attorney-client privilege is "a privilege of a client to refuse to testify or to have his counsel testify as to confidential communications between the two made in connection with the rendering of legal representation." *In re Grand Jury Proceedings,* 417 F.3d 18, 21 (1st Cir.2005).

The purpose of the privilege is "to encourage full and frank communication between attorneys and their clients," *Upjohn Co. v. United States,* 449 U.S. 383, 389 (1981) and protects "those communications that are confidential and are made for the purpose of seeking or receiving legal advice." *In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.),* 348 F.3d 16, 22 (1st Cir.2003). The privilege "extends to all communications made to an attorney or counsellor, duly qualified and authorized as such, and applied to by the party in that capacity, with a view to obtain his advice and opinions in matters of law, in relation to his legal rights, duties, and obligations." *FDIC v. Ogden Corp.,* 202 F.3d 454, 461 (1st Cir.2000) (citation omitted).

The First Circuit has adopted the following definition of the attorney client privilege:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.
>
> *United States v. Mass. Inst. of Tech.,* 129 F.3d 681, 684 (1st Cir.1997) (*quoting* 8 J. Wigmore, *Evidence* § 2292, at 554 (McNaughton rev. 1961)).

The burden of proving an applicable privilege lies with the party claiming the privilege. *United States v. Schussel*, 291 F. App'x 336, 343 (1st Cir. 2008). The party must demonstrate by a preponderance of the evidence not only that the privilege applies, but also that it has not been waived or that exceptions do not apply. *FDIC v. Ogden Corp.,* 202 F.3d 454, 460 (1st Cir.2000).

Here, the privilege does not apply for the following reasons.

**B.  The Crime-Fraud Exception Applies**

First, the crime-fraud exception applies because the defendants in this case, CONDRON and METIVIER, were using the Attorney's services to facilitate the fraud charged in the

indictment and their communications (namely CONDRON's) with the Attorney were directly related to the fraud scheme.

The crime-fraud exception "withdraws protection where the client sought or employed legal representation in order to commit or facilitate a crime or fraud." *In re Grand Jury Proceedings,* 417 F.3d 18, 22 (1st Cir.2005). The party invoking the exception "must make a prima facie showing: (1) that the client was engaged in (or was planning) criminal or fraudulent activity when the attorney-client communications took place; *and* (2) that the communications were intended by the client to facilitate or conceal the criminal or fraudulent activity." *In re Grand Jury Proceedings (Gregory P. Violette),* 183 F.3d 71, 75 (1st Cir.1999); *see also United States v. Albertelli,* 687 F.3d 439, 450 (1st Cir.2012); *see also In re Grand Jury Proceedings,* 417 F.3d at 23 & n. 4.) (prima facie means a reasonable basis to believe that the lawyer's services were used by the client to foster a crime or fraud); *United States v. Gorski*, 807 F.3d 451, 460 (1st Cir. 2015).

To meet the first prong of this test, the party challenging the privilege must present a prima facie showing that, if believed by the trier of fact, would establish the elements of a crime. *United States v. Weed*, 99 F. Supp. 3d 201, 205–06 (D. Mass. 2015). Prong two may be satisfied with a showing of a "close relationship between the attorney-client communications and the possible criminal or fraudulent activity." *Id.* (*citing In re Grand Jury Proceedings # 5,* 401 F.3d 247, 251 (4th Cir.2005).

Here, the indictment itself creates a prima facie case for the crime-fraud exception. The sole purpose for METIVIER retaining the Attorney's services was for the 1603 Grant Applications. The applications, in fact, contained false information. The false information was material and Treasury would not have given the defendants $8 million in government funds had

4

it known that the actual supplier of the energy property was either CONDRON himself or CONDRON's mother, a registered nurse with no experience in the field. Based on Treasury and NREL later detailed response, Treasury would have surely not granted the application and would have asked more questions.

The instant case is also similar to the decision in *Weed*.[1] There, based on information from co-conspirators including their guilty pleas, the court held that the defendant was drafting misleading and false legal advice memos to help manipulate the price of securities in publically traded companies. *See Weed*, 99 F. Supp. 3d at 205–06. The crime-fraud exception, furthermore, does not bear on the conduct or intent of the lawyer involved, "because the crime-fraud exception is triggered by the intent of the client." *United States v. Gorski*, 807 F.3d 451, 462 (1st Cir. 2015); *see also United States v. Schussel*, 291 F. App'x 336, 345 (1st Cir. 2008) ("The exception applies, therefore, regardless of whether the attorney was an innocent or willing accomplice").

Here, CONDRON and METIVIER were using the Attorney as their vehicle to submit documents and information to Treasury. CONDRON supplied the fraudulent documents and information and METIIVER signed documents knowing that they were not true.

C.     **The Attorney was Not Providing Legal Services**

Secondly, the work that the Attorney was providing to CONDRON and METIVIER was not legal advice. Instead, the Attorney obtained documents and information from CONDRON and provided that information to a third party, the U.S. Treasury. For example, while the attorney-client privilege protects communications between corporate officers and in-house counsel, "the privilege does not apply when in-house counsel is engaged in 'non-legal work.'"

---

[1] Weed's conviction was upheld on appeal, though the attorney-client issue was not raised as an issue on appeal. *See United States v. Weed*, 873 F.3d 68 (1st Cir. 2018)

5

*United States v. Windsor Capital Corp.*, 524 F. Supp. 2d 74, 81 (D. Mass. 2007) (*citing Burlington Industries v. Exxon Corporation,* 65 F.R.D. 26, 33 (D.Md.1974)). Courts have held that "non-legal work" includes the rendering of business or technical advice unrelated to any legal issues. *Id., citing Pacamor Bearings, Inc. v. Minebea Co., Ltd.,* 918 F.Supp. 491, 510-511 (D.N.H.1996).

Furthermore, the confidential nature of the communications, even if legal advice, is extinguished by the fact that the information was then conveyed to Treasury. Under "the third-party disclosure exception . . . . the attorney-client privilege does not attach to communications between attorney and client when they have been disclosed to a third party or were created with the intention of being disclosed to a third party." *United States v. Schussel*, 291 F. App'x 336, 347 (1st Cir. 2008). In other words, "when information is transmitted to an attorney with the intent that the information will be transmitted to a third-party ..., such information is not confidential." *United States v. Lawless,* 709 F.2d 485, 487 (7th Cir.1983) (finding waiver of attorney-client privilege where information used to prepare tax return would be disclosed on the tax return itself); *see Westinghouse Elec. Corp. v. Republic of the Philippines,* 951 F.2d 1414, 1427 (3d Cir.1991) (it is well established that "voluntary disclosure to a third party waives the attorney-client privilege even if the third party agrees not to disclose the communications to anyone else"); 1 McCormick On Evid. § 91 (7th ed.) ("Wherever the matters communicated to the attorney are intended by the client to be made public or revealed to third persons, obviously the element of confidentiality is wanting").

**D.      METIVIER Waived the Privilege**

Finally, and most significantly, the Attorney identified METIVIER as his client and METIVIER has agreed to waive the privilege, to the extent that there are any attorney-client communications.

## CONCLUSION

The government submits that the testimony of Attorney, and the documents and email communications he had with the defendants, are relevant and admissible at trial and are not subject to the attorney-client privilege.

 

ANDREW E. LELLING
United States Attorney

By:    /s/ Neil Gallagher
Neil J. Gallagher, Jr.
Elysa Q. Wan
Assistant U.S. Attorneys

Date Submitted:  January 21, 2019

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants .

                                                   /s/ Neil Gallagher
                                                  Neil Gallagher
                                                  Assistant United States Attorney

Date: January 21, 2019