UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>CHRISTOPHER CONDRON<br>JESSICA METIVIER<br><br>  Defendants | CRIMINAL No. 17-10243-IT |

## SECOND MOTION IN LIMINE REGARDING ATTORNEY TESTIMONY

In addition to the government's Motions in Limine filed on January 21, 2019, the United States respectfully moves this Court to admit the statements "the Attorney" made to the U.S. Treasury Department ("Treasury") and the National Research Energy Laboratory ("NREL") as non-hearsay under Federal Rules of Evidence 801(d)(2)(A) and 801(d)(2)(C-D). As grounds, the government submits the following.

### Relevant Facts

As summarized in the government's pretrial memorandum (Doc. 66), between 2009 and 2012, defendants CHRISTOPHER CONDRON and JESSICA METIVIER caused four separate fraudulent applications to be submitted to Treasury that sought more than $51 million in energy property grants. Each of the applications were submitted by an attorney that METIVIER and CONDRON hired to prepare and submit the applications ("the Attorney") to Treasury.

At trial, the Attorney will testify that CONDRON was the driving force behind the applications and exercised the decision making authority and control over the entire energy property operations. When the Attorney needed to answer questions from Treasury and the

NREL about the applications, he obtained those answers from CONDRON and repeated those same answers to Treasury and the NREL.

On January 11, 2013 and April 17, 2013, the Attorney emailed answers to questions that Edward Settle from NREL posed to the Attorney regarding the 1603 applications. The answers were materially false and form the basis of counts three and four of the indictment. At trial, the government anticipates that the Attorney will testify that the answers he provided to Settle came directly from CONDRON.

## Legal Analysis

The 1603 applications and the statements the Attorney submitted to Edward Settle of the NREL are not hearsay for the following reasons. First, as discussed in the government's motion in limine filed on January 12, 2019 (Doc. 68), the statements are being not offered for the truth and thus fall outside the definition of hearsay. *See* Fed. R. Evid. 801(c)(2) ("offers in evidence to prove the truth of the matter asserted . . ."). Certain aspects of the applications are not offered for the truth because they are in fact false and form the basis of the false claims conspiracy and wire fraud scheme. Second, as described below, the statements (even if offered for the truth) are admissible as admissions against a party opponent. Third, the statements are non-hearsay because the declarant (the Attorney) made them the behalf of, and consultation with, CONDRON. In other words, CONDRON authorized the Attorney to make the statements and the Attorney was acting as CONDRON's agent.

A.     Rule 801(d)(2)(A) – Party Opponent Admission

Under the Federal Rules of Evidence, a statement is "not hearsay" if offered by the government against the defendant and the statement "was made by the party in an individual or representative capacity." Fed. R. Evid. 801(d)(2)(A). The statement, furthermore, does not have

to be against the declarant or the defendant's interest. *See United States v. Aviles-Colon*, 536 F.3d 1, 23 (1st Cir. 2018) ("[t]he fact that it was a statement by [defendant] and there was an attempt to use it by a party opponent, the government, is sufficient to get the statement in under 801(d)(2)(A)"). "Rule 801(d)(2)(A) simply admits those statements made by one party, but offered as evidence by the opposing party." *United States v. Reed*, 227 F.3d 763, 770 (7th Cir. 2000).

Here, through the testimony of the Attorney, the government will establish that the statements in the 1603 applications and the emails that the Attorney sent identified in counts three and four were in fact CONDRON's own statements; statements that CONDRON authored, created, and caused and thus are admissions of a party opponent under Rule 801(d)(2)(A).

B.     Rule 801(d)(2)(C-D) – Authorized Statements

The statements are also admissible as non-hearsay, even if they were not CONDRON's own statements, because they were "made by a person whom [the defendant] authorized to make a statement on the subject." Fed. R. Evid 801(d)(2)(C). In this case, by engaging and paying the Attorney to prepare and submit the 1603 applications, CONDRON authorized the Attorney to make statements to Treasury and the NREL, in the applications themselves and in responses to questions. *See e.g., United States v. Reilley,* 33 F.3d 1396, 1412-1413 (3d Cir. 1994) (radio telegrams ordering illegal disposal at sea admissible as non-hearsay because defendant authorized sender to send instructions to crew under Fed. R. Evid. 801(d)(2)(C); but compare *United States v. Bonds*, 608 F.3d 495, 503-04 (9th Cir. 2010) (mere fact that defendant hired baseball trainer did not demonstrate that defendant authorized trainer to speak to laboratory on his behalf about urine samples). The statements are furthermore reliable because instead of answering the questions on his own, the Attorney got answers from CONDRON and gave those

same answers to Treasury and NREL. At times, the Attorney will simply repeating what CONDRON had told him.

Similarly, the statements are also non-hearsay because they were made by CONDRON's "agent or employee on a matter within the scope of that relationship and while it existed." Fed. R. Evid. 801(d)(2)(D). Here, without doubt, an agency relationship[1] existed between the Attorney and CONDRON. That was the whole point. METIVIER and CONDRON hired the Attorney to prepare and submit the statements and answer questions.

"An agency relationship arises where the principal has the right to control the conduct of the agent with respect to matters entrusted to the agent." *Atrium of Princeton, LLC v. NLRB*, 684 F.3d 1310, 1315 (D.C. Cir. 2012). At trial, the government will demonstrate that CONDRON was not only the driving force behind each of the applications, but exercised complete control and decision making. Compare Bonds, 608 F.3d 495, 505 (9th Cir. 2010) (baseball trainer, found not be agency, had free reign to make recommendations and principal professional baseball player had a "Dude, whatever" attitude toward trainer's actions). For this reason, the statements that the Attorney made for CONDRON as his agent are admissible against CONDRON.

Finally, the Attorney will be a witness at trial and will subject to cross-examination. Thus, any concern about the reliability of statements that CONDRON made to the Attorney and that were then communicated to Treasury and the NREL can be thoroughly tested and evaluated through cross-examination.

---

[1] Agency is the fiduciary relationship that arises when one person (a "principal") manifests assent to another person (an "agent") that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act. *See* Restatement (Third) Of Agency § 1.01 (2006).

## CONCLUSION

The government submits that the testimony of Attorney, and the documents and email communications he had with the defendants, are relevant and admissible at trial and are not hearsay.

ANDREW E. LELLING
United States Attorney

By: /s/ Neil Gallagher
Neil J. Gallagher, Jr.
Elysa Q. Wan
Assistant U.S. Attorneys

Date Submitted: April 29, 2019

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants .

/s/ Neil Gallagher
Neil Gallagher
Assistant United States Attorney