# UNITED STATES DISTRICT COURT

# District of Massachusetts

United States of America

v.                                          Case No. 17-cr-10243-IT

Christopher N. Condron

Defendant

## EMERGENCY MOTION TO REQUEST CLARIFICATION OF TERMS USED DURING TRIAL AND FINDINGS CONTAINED IN THE OPINION AND FOR POSSIBLE REVERSAL OF COUNTS 1,3,and 4

The manifest intent of congress, regarding counts 1, 3, and 4 in relation to "relationship" strongly appears, the Opinion related to counts 1, 3 and 4, subverts, the mens legislatories or Congressional intent. 26 USC 45, has its own, specific definition of "related persons", which does not include the purported relationships, stated in the

Opinion. There is no doubt that congressional intent should prevail. Defendant contends, the purported "personal relationship(s)" and/or the purported nexus to exhibit such relationships existence, related to Counts 1, 3 and 4, and with no known duty to disclose, does not exist under the law.

## "IV. Discussion

A. *Sufficiency of the Evidence*

1. Conspiracy

Count 1

"a reasonable jury could have found that, given the <u>relationship between the parties</u>, the transactions were shams,"

"2. Wire Fraud"

Count 3 appears to state, by not disclosing the purported relationship, between Ms. Brewer and Ms. Metivier, was the "locus classicus of fraud....."

"c. Count 4"

"a reasonable jury could still have found that the uploaded response was designed to mislead the government where it <u>did not disclose the personal relationship between Brewer and Metivier,....</u>"

At trial, the government attempted to create a purported "relationship", which does not exist under the relevant tax code. The government stated that there must be a "relationship", between Ms. Metivier and Ms. Brewer. The government then stated to the effect, the purported relationship existed, because "Ms. Metivier is the mother, of/to Ms. Brewer's grandchildren". Under, 26 USC 45 / 26 USC 1563, Ms. Brewer does not appear to be a "related person" to her grandchildren, as they have not, "attained the age of 21 years". Ms. Brewer's grandchildren, to this day still have not "attained the age of 21 years". There is no mention of the type of "relationship the government contends between Metivier and Brewer, under 26 USC 45's definition. If Congress wanted to make a "V" or "U" or other special shape, type relationship, Congress does have the power to do so. However, the manifest intent of Congress, has specifically not done so, in the governing law nor any of the related tax. The purported "personal relationship" simply does not exist under the governing tax code, 26 USC 45.

"The normal difference afforded to agency interpretation of statutes under Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984), is not appropriate where, as here, Congress has "directly spoken" to the question of the statute itself. Id. at 842, 104 S. Ct. at 2781. See Stupak-Thrall v. United States, 70 F.3d 881 (6th Cir. 1995) ("question of whether an agency has been granted authority to issue rules and regulations is a question of law and subject to de novo review"). It is only when Congress has not spoken directly to a particular issue in a statute, or where a statute is silent or ambiguous on a particular issue, that the court must defer to a reasonable agency interpretation. See Chevron, 467 U.S. at 843."

Defendant, has not quoted, from IRC 45K, 46, 168, 267, 1041, 707, though the transactions were incompliance with these tax codes, even though not required to do so. There are many other tax codes which demonstrate that the purported "relationship" between, Brewer and Metivier, does not exist under the tax code, in any manner. However, the tax code definition which does in fact, matter, is IRC 45, which the 1603 Program Guidance and the Opinion in its notes section, both point to as controlling law. IRC 45, does not include "personal relationships" of any kind. "Failure of the government to adduce sufficient evidence to warrant submission to the jury is <u>defect affecting substantial rights</u>." *United States v. Kaplan*, 586 F.2d 980 (9th Cir)

"<u>The interpretation of a statute always begins with the plain language of the text,</u> "and <u>ends there</u> as well if the text is unambiguous." *BedRoc Ltd. v. United States*, <u>541 U.S. 176</u>, 183, 124 S. Ct. 1587, <u>158 L. Ed. 2d 338</u> (2004)."


26 USC 45(e)(4)

"45. Electricity produced from certain renewable resources, etc."

"(e) Definitions and special rules. For purposes of this section"

"(4) <u>Related persons.</u> <u>Persons shall be treated as related to each other</u> if such persons <u>would be treated as a single employer</u> under the regulations prescribed under <u>section 52(b) [26 USCS 52(b)]</u>. In the case of a corporation which is a member of an affiliated group of corporations filing a consolidated return, such corporation shall be treated as selling electricity to an unrelated person if such electricity is sold to such a person by another member of such group."

The first part of section 45(e)(4) seems to state that the only "relationship" of note, from the case before the Court, would be between, Acton Bio Energy and/or, Concord Nurseries, and/or, Kansas Green Energy and/or, Ocean Wave Energy, based on, 26 USC 52(a) and 26 USC 1563 (a)(2). The second part of the above paragraph seems to state, if for example Acton Bio Energy, sold electricity to Concord Nurseries, it strongly appears as though the sale would be considered or "treated" as a transaction by an "unrelated person".

**"52. Special rules."**

"**(b)** Employees of partnerships, proprietorships, etc., which are under common control. For purposes of this subpart [26 USCS 51 et seq.], under regulations prescribed by the Secretary

   **(1)** all employees of trades or business (whether or not incorporated) which are under common control shall be treated as employed by a single employer, and

   **(2)** the credit (if any) determined under section 51(a) [26 USCS 51(a)] with respect to each trade or business shall be its proportionate share of the wages giving rise to such credit.

<u>The regulations prescribed under this subsection shall be based on principles similar to the principles which apply in the case of subsection (a).</u>

"**52. Special rules.**"

"**(a) Controlled group of corporations.** For purposes of this subpart [26 USCS 51 et seq.], all employees of all corporations which are members of the same controlled group of corporations shall be treated as employed by a single employer. In any such case, the credit (if any) determined under section 51(a) [26 USCS 51(a)] with respect to each such member shall be its proportionate share of the wages giving rise to such credit. For purposes of this subsection, the term controlled group of corporations has the meaning given to such term by section 1563(a) [26 USCS 1563(a)], except that

(1) more than 50 percent shall be substituted for at least 80 percent each place it appears in section 1563(a)(1) [26 USCS 1563(a)(1)], and

(2) the determination shall be made without regard to subsections (a)(4) and (e)(3)(C) of section 1563 [26 USCS 1563]."

26 USC 1563, does consider lineal, familial relationships, however, 26 USC 1563, does not consider "personal relationships", of any kind as stated in the Opinion. The Again no "V", "U" or "skip" type relationships, or any other fancy shape, a straight line, that is all.

"1563. Definitions and special rules.

(a) **Controlled group of corporations.** For purposes of this part [26 USCS 1561 et seq.], the term controlled group of corporations means any group of"

"(2) **Brother-sister controlled group.** Two or more corporations if 5 or fewer persons who are individuals, estates, or trusts own (within the meaning of subsection (d)(2)) stock possessing more than 50 percent of the total combined voting power of all classes of stock entitled to vote or more than 50 percent of the total value of shares of all classes of stock of each corporation, taking into account the stock ownership of each such person only to the extent such stock ownership is identical with respect to each such corporation."

"(e) Constructive ownership."

"Constructive ownership rule in 26 USCS 1563(e)(1) applies only to that particular person; it cannot be used to determine whether another taxpayer has or has not required ownership to make the group controlled one. 60 T.C. 356."

"(6) Children, grandchildren, parents, and grandparents."

"(A) Minor children. An individual shall be considered as owning stock owned, directly or indirectly, by or for his children who have not attained the age of 21 years, and, if the individual has not attained the age of 21 years, the stock owned, directly or indirectly, by or for his parents."

"**(B) Adult children and <u>grandchildren</u>**. An individual who owns (within the meaning of subsection (d)(2), but without regard to this subparagraph) more than 50 percent of the total combined voting power of all classes of stock entitled to vote or more than 50 percent of the total value of shares of all classes of stock in a corporation shall be considered as owning the stock in such corporation owned, directly or indirectly, by or for his **parents**, grandparents**, <u>grandchildren</u>,** and children **<u>who have attained the age of 21 years</u>**."

It should be very clear, the implicit, manifest intent of congress, related to 26 USC 45, cascading to 26 USC 1563, does not, include the purported "personal relationship" sighted in the Opinion. Ms. Brewer's grandchildren still have not "attained the age of 21 years." Ms. Brewer never owned any stock, in any of Ms. Metivier's, entities. "proof beyond a reasonable doubt is constitutionally required." *Pierre-Louis v. Ryan* 147075 (quoting) In *re Winship*, 397 US 358, 362, 90 S. Ct. 1068, 25 L. Ed 2d. 368, (1970).

If Attorney Colman, an award winning tax expert, after reasonable diligence, was unable to find a purported "personal relationship", contained in the convening tax law, 26 USC 45, or any other relevant tax law. Again, contained in Attorney Colman's statements to the IRS, and maybe in his testimony, Colman stated, related party transactions was literally the first question asked of his expertise. "The law requires that the insured shall not only, in good faith, answer all the interrogatories correctly, but shall use reasonable diligence to see that the answers are correctly written....." 41 Conn. 168-171, 172. Based on the governing law, clearly the answers given, were made in

"good faith". "good faith" "'is an elusive idea, taking on different meanings and emphases as {207 L. Ed. 2d 627} we move from one context to another.'" Black's Law Dictionary 836 (11th ed. 2019). In addition, whether a party acted in good faith is a {2022 U.S. Dist. LEXIS 40} question of fact. *Rennie*, 139 F. Supp. 2d at 168.

If for some reason, the court finds opposite of the manifest intent of Congress, as was clearly defined in 26 USC 45, which does strongly appear to result with no existence of the purported "relationship" sighted in the Opinion, and subsequently no duty to disclose, then the Court should find, based on the complex tax code involved with the 1603 Program, the answers given for Counts, 3 and 4 and their effect on Count 1, were made in "good faith", as they are still honestly believed to be true and correct, especially given the related tax code definition(s) above. Intent to defraud "Excludes false statements honestly believed to be true and promises or predictions made in good faith." *United States v. Muffelman* 470 F.3d33, 36 (1st Cir. 2006).

The Supreme Court has determined that actual innocence means "factual innocence, not mere legal insufficiency," and "[t]o establish actual innocence, petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley v. U.S.*, 523 U.S. 614, 623, 118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998).

"In cases involving constitutional errors, courts duty is to reverse, unless it is able to declare belief that plain error is harmless beyond a reasonable doubt." *United States v. Hernandez-Berceda*, 572 F2d 681 (9th Cir. 1978).

The First Circuit has defined miscarriage of justice narrowly as "encompassing only those 'extraordinary instances when a constitutional violation probably has caused the conviction of one innocent of the crime.'" *Id.* at 99 (quoting *McCleskey v. Zant*, 499 U.S. 467, 494, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991)); *see United States v. Olano*, 507 U.S. 725, 736, 113 S. Ct. 1770, 123 L. Ed. 2d 508 (1993) ("In our collateral-review jurisprudence, the term 'miscarriage of justice' means that the defendant is actually innocent.").

DEFENDANT

NOVEMBER 14, 2022

*[signature]*

CHRISTOPHER N. CONDRON