UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,       ) | |
| ) | Criminal No. 17-cr-10243-IT |
| Plaintiff,       ) | |
| v.       ) | |
| ) | **FOURTH ADDENDUM TO REPLY IN** |
| ) | **SUPPORT OF MOTION FOR** |
| CHRISTOPHER N. CONDRON,       ) | **COMPASSIONATE RELEASE** |
| ) | |
| Defendant.       ) | |

On December 13, 2023, this Court ordered the Government to provide an update as to Mr. Condron's medical situation, addressing the specific issues raised in his motion for compassionate release (Doc. No. 630) and supplemental briefs (Doc. Nos. 640–642). Doc. No. 643. Fifteen days later, the Government submitted its response. Doc. No. 644. On January 3, 2024 Mr. Condron submitted a reply, pointing out the significant procedural and substantive deficiencies in the government's response.[1] Doc. No. 645.

Mr. Condron's motion remains pending. Mr. Condron supplies this additional briefing to update the Court on the latest developments.

First, Mr. Condron reports through counsel that while he has subsequently had an MRI, he has not yet been informed of the results or had a follow-up with the University of Kentucky (UK).

---

[1] To briefly restate those deficiencies here: the government submitted a one-page, unsigned statement that did not identify the author. The statement purported to describe records that it did not attach, and purported to describe conversations with medical personnel that it did not identify. It speculated about unidentified difficulties in scheduling appointments with the University of Kentucky Medical Center but did not identify any actual problems or even identify any efforts made by BOP to schedule appointments. It made assertions about Mr. Condron's A1C levels that were flatly contradicted by medical records that had been previously submitted to the Court. Finally, it simply did not address several concerns previously raised, such as the lack of clarity about UK's ability to even perform a combined labyrinthectomy/cochlear implant surgery.

His Meniere's disease and associated vertigo continues to affect him, a prospect that is not likely to change given the challenges he has had with scheduling treatment at UK.

Second, given his continued participation in the Residential Drug Abuse Program (RDAP), Mr. Condron's release date continues to move forward. The BOP website presently shows a release date of February 4, 2026, less than two years from now. *See* **Exhibit A** (release date information pulled from BOP website). This should advance closer to today as Mr. Condron completes RDAP; if he obtains other programming credits, it would come even closer. Moreover, as previously noted, Mr. Condron is likely to be eligible to serve the last twelve months of his sentence in a Residential Reentry Center (RRC) given his good record as an inmate under 18 U.S.C. § 3624(c)(1). In fact, this time could be longer; while § 3624(c)(1) allows up to twelve months of "pre-release" time in a residential reentry center, this is not an upper limit on that time, because these centers are considered correctional institutions, and thus BOP always has authority to designate inmates to these facilities.

The fact that Mr. Condron likely now has less than twelve months remaining at FMC Lexington affects the disposition of this motion in two ways. First, from a penological perspective, while the government stated in its initial response that compassionate release should be denied because Mr. Condron had not yet served a significant portion of his sentence, that is no longer the case (if it even ever was). Mr. Condron has been incarcerated in a prison or jail since August 2021, a total of 31 months. Assuming he is released from FMC Lexington to an RRC in February 2025 (and again, it may be sooner), that means that his total time in a jail or prison will be 42 months, meaning that he has served nearly 75% of this time. Even considering the time he will spend in a RRC, he has served nearly 60% of that time. And again, these numbers will only get higher as time moves on and as additional credit is added to his sentence.

The upshot is that by any definition, he has served a significant portion of his sentence, and a particularly significant portion of his time in a prison as opposed to a lesser form of correctional supervision. The penological interest in continuing his detention, therefore, is significantly diminished, which would support resentencing him to time served coupled with supervised release. The force of this argument is even greater if the Court were to order the lesser (but still significant) relief of home confinement. If the Court is inclined to order Mr. Condron to a lesser form of detention, there is little benefit in continuing his time at FMC Lexington when he is likely to be moved to a lower level of confinement within the next 12 months.

The second reason is medical. As noted in his most recent filing, Mr. Condron is a candidate for a cochlear implant, possibly in combination with a labyrinthectomy, but it is not clear that UK can accomplish the combined procedure. Even if it can, however, the cochlear implant procedure requires frequent follow-up visits; generally, a patient needs at least 6-8 follow-up appointments over the first year. *See, e.g.* https://www.med.unc.edu/ent/adultcochlearimplant/cochlear-implants/cochlear-implant-surgery-follow-up (last accessed March 22, 2024). So far, BOP has demonstrated a complete inability to schedule timely visits at UK for Mr. Condron's various medical issues, and there is no reason to believe it will have an easier time doing so when these visits need to be more frequent. Moreover, even assuming BOP could do so flawlessly, because he is now likely to have less than a year remaining in Kentucky, he will likely have to either (1) wait until he is released/transferred from Kentucky to have the surgery or (2) have the surgery in Kentucky but then have his follow-up care disrupted. In either event, Mr. Condron's ability to receive proper care will be significantly diminished if his incarceration at FMC Lexington continues, even assuming that UK can do the combined surgery and BOP can schedule the appropriate follow-up care.

## CONCLUSION

There is a significant medical benefit to either resentencing Mr. Condron to time served or, at a minimum, adjusting his sentence to be served in home confinement, in Massachusetts, so that he can access the medical care he needs. And the penological upside of his continued detention at FMC Lexington is negligible. Mr. Condron respectfully requests that the Court issue an indicative ruling that it would grant compassionate release if it had jurisdiction to do so. At that point, Mr. Condron will advise the First Circuit promptly pursuant to Fed. R. Crim. P. 37(b) and Fed. R. App. P. 12.1, so that it can issue a limited remand for the purpose of resentencing Mr. Condron.

In addition, Mr. Condron respectfully requests that the Court expedite consideration of his request. Mr. Condron respects and appreciates that there are many demands placed on the Court's time and that his case is but one of many. However, as outlined above, his medical situation is such that further delay complicates his ability to receive a specialized surgery, owing to the change in his location that is likely to occur within the next twelve months.

Dated:  March 22, 2024                              Respectfully submitted,

/s/ Eamonn R. C. Hart
Eamonn R. C. Hart (BBO# 696913)
ehart@brannlaw.com
Brann & Isaacson
113 Lisbon Street
P.O. Box 3070
Lewiston, ME 04243-3070
(207) 786-3566

*Attorney for Defendant*
*Christopher Condron*

## CERTIFICATE OF SERVICE

      I certify that on March 22, 2024, a copy of the forgoing was filed through the ECF system, which will sent notice to all counsel of record.

| | |
|---|---|
| Dated: March 22, 2024 | /s/ Eamonn R. C. Hart |
| | Eamonn R. C. Hart |